**FILED & ENTERED**

MAY 22 2013

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>**DBI HOUSING, INC.,**<br><br>                Debtor. | Case No. 2:12-bk-51335-RK<br><br>Chapter 11<br><br>**MEMORANDUM DECISION ON MOTION OF LITTLE MEDICI, LLC, FOR RELIEF FROM AUTOMATIC STAY REGARDING PROPERTY LOCATED AT 4219-4225 SOUTH HOOVER STREET, LOS ANGELES, CALIFORNIA, 90037**<br><br>Trial Hearing: May 9, 2013<br>Time: 9:00 a.m.<br>Courtroom: 1675 |

       The motion for relief from the automatic stay filed on January 22, 2013 by Little Medici, LLC ("movant") first came on for hearing before the undersigned United States Bankruptcy Judge on February 19, 2013. Because the motion raised material factual issues regarding valuation, the court set and conducted an evidentiary hearing on the motion on May 9, 2013.

       By its motion, movant seeks relief from the automatic stay for a lack of adequate protection of its lien pursuant to 11 U.S.C. § 362(d)(1), for failure to commence required installment payments pursuant to 11 U.S.C. § 362(d)(3), and for bad faith pursuant to 11

1

U.S.C. § 362(d)(4) on grounds that this bankruptcy case affecting movant's real property collateral is a serial bankruptcy filing.

The evidentiary hearing was necessitated because movant and the debtor disagree as to the value of the property located at 4219-4225 South Hoover Street, Los Angeles, California, 90037 (the "subject property"), which is a material issue to resolving the issues raised by the motion. *See In re Mellor,* 734 F.2d 1396, 1400-1401 (9th Cir. 1984). The court conducted the evidentiary hearing to receive testimony and documentary evidence to resolve the issues of valuation on May 9, 2013. At the hearing on May 9, 2013, Roksana Moradi, of the law firm of Simon Resnik Hayes LLP, appeared on behalf of the debtor. Chad Biggins, of the Law Offices of Chad Biggins, appeared on behalf of the movant.

The parties do not dispute that movant's lien is in first position on the subject property in the amount of $428,267.00 as of the date of filing the motion, on January 22, 2013. At the evidentiary hearing, debtor's valuation expert witness, Steven J. Decker, stated that the subject property was worth $620,000 as of April 5, 2013. *See Declaration of Steven J. Decker, attached to Debtor's Opposition Brief*, Exhibit B at 14. Movant's valuation expert witness, David Hahn, stated that the subject property was worth $415,000 as of March 20, 2013. *See Declaration of Chad Biggins with Appraisal of David Hahn attached as Exhibit A*. The appraisal report of Mr. Hahn was attached to counsel's declaration, but the report itself was not accompanied by Mr. Hahn's declaration under penalty of perjury. The court heard the testimony of the appraisers called by the parties as expert witnesses, and Mr. Hahn adopted his report as his direct testimony during his testimony under penalty of perjury at trial. The parties conducted direct, cross, re-direct, and re-cross examination of these witnesses, and the appraisal reports of the expert witnesses were received into evidence without objection.

For the reasons discussed herein, the court determines that the fair market value of the subject property is $510,000. Although both appraisers were certified state real estate appraisers and experienced, and the court finds that their testimony was

1 admissible and credible, the court does not completely adopt the opinion of either expert
2 witness.  The court finds that the comparable sales analysis of Mr. Decker is more
3 credible than Mr. Hahn's because Mr. Decker considered the surrounding neighborhood
4 in his analysis, and his valuation report includes two comparable sales that occurred in
5 2013.  *See Debtor's Opposition Brief*, Exhibit B at 10.  Additionally, Mr. Decker used all
6 non-REO (Real Estate Owned) property sales for comparison, which are more indicative
7 of fair market value, and all his selected properties were within two miles of the subject
8 property.  *Testimony of Steven Decker, May 9, 2013* at 10:56-11:03 a.m.  In this court's
9 view, Mr. Hahn's sales comparables were generally inferior because they were more
10 distant from the subject property in comparison to Mr. Decker's sales comparables.
11 Moreover, Mr. Hahn's sales comparables #1 and #4 were REO sales.  *Testimony of*
12 *Steven Decker, May 9, 2013* at 10:56-10:57 a.m.  Mr. Hahn did not give an explanation
13 for the use of REO sales in his sales comparables other than a generalized statement
14 that REO sales influenced the local real estate sales market, though in contrast, Mr.
15 Decker was able to identify more non-REO sales in the neighborhood, which would better
16 reflect the market valuation that the court should conduct.  *Id.*  If Mr. Hahn was right that
17 REO sales heavily influenced the local market, this would have been reflected in Mr.
18 Decker's non-REO sales comparables, which does not appear to be the case.  *Id.*

19      Mr. Hahn also did not include a neighborhood analysis in his valuation report, nor
20 did he adjust his sales comparables based on the availability or lack of parking at those
21 properties.  *Testimony of David Hahn, May 9, 2013* at 9:53-9:56 a.m.  Sales comparable
22 #3 in Mr. Hahn's valuation report reflected a sale that occurred 18 months ago, in
23 September 2011, explained that the market has not changed much in 18 months.
24 *Testimony of David Hahn, May 9, 2013* at 10:17 a.m.  Using Mr. Decker's sales
25 comparable analysis of $56,000 per rentable unit (not including the two studio units not
26 yet legally permitted), which the court finds credible, yields a market valuation of
27 $504,000.  Mr. Decker relied upon his Sales Comparables #1, 2 and 5 as the most
28 relevant in determining a $56,000 per rentable unit figure, which the court also finds to be

3

credible, as these comparable properties are located close to the subject property (less than 0.6 mile away) and similar in character (i.e., residential rental).

Mr. Decker conducted a substantial analysis of the rental market for the subject property, comparing other similar rental properties to determine the correct market rent of the rental units in the subject property. This analysis rendered a higher appraised value for the subject property because the analysis supported higher potential rental rates. In contrast, Mr. Hahn did not conduct his own market rent analysis, and instead relied upon previous appraisers' computations, which he admitted were not the most current rates. *See Declaration of Chad Biggins with Appraisal of David Hahn attached,* Exhibit A at 11; *Testimony of David Hahn*, May 9, 2013 at 10:02-10:03 a.m. Although it is permissible for experts in the field to rely on other experts' reports, Mr. Hahn conceded that the current rental rates are preferable when making a proper income analysis of a property. *See Testimony of David Hahn, May 9, 2013 at* 10:02-10:03 a.m., 10:24 a.m. Both expert witnesses gave primary weight to the income analysis approach for this property.

Additionally, Mr. Hahn's valuation report was inferior because it did not analyze the existence of rent control, nor did he conduct or obtain a current rent roll for the subject property. *Testimony of David Hahn, May 9, 2013* at 10:02-10:03 a.m.,10:20-10:21 a.m. Mr. Hahn used rent rolls from previous appraisals. *Id.* However, the court notes that Mr. Decker included potential rents from the two nonconforming units located in the subject property in his market rent analysis. This is perhaps the most significant difference in the valuation analysis of the two appraisers based on the income approach. Mr. Hahn valued the rent generated by the two nonconforming units at $0 based on their nonconformity. *See Declaration of Chad Biggins with Appraisal of David Hahn attached,* Exhibit A at 11. In contrast, Mr. Decker's report included the rent of two "single units," one of which is currently leased (both are nonconforming units), and valued the rental value of those two units at a total income of $12,876 per year. *See Debtor's Opposition Brief,* Exhibit B at 16. Although Mr. Decker explained his reasoning for including those units in his analysis—because the units could be converted to commercial (legal) units or

4

prospective buyers would consider the units in purchase price notwithstanding their nonconformity—Mr. Decker conceded that, as of May 9, 2013, the units were not yet legally permitted. *Testimony of Steven Decker, May 9, 2013* at 10:33-10:34 a.m. Although Mr. Decker stated he considered the nonconformity of the units in determining his overall capitalization rate of 8%, he did not apply a discount factor based on the nonconformity. *Testimony of Steven Decker, May 9, 2013* at 10:51-10:52 a.m. The court finds that these rent values should be considered because the income of these units reflects actual reality, but should be substantially discounted in the income-approach determination, because while the units are not yet legally permitted units, there was credible testimony that debtor has obtained a zoning variance for the units, subject to further approval of building permits. Accordingly, the court will adjust the net operating income computed by Mr. Decker, which the court finds credible, though the court will not consider the potential income of the vacant studio unit computed at a market rate of $8,040, and subtracting out that income, but allowing the actual rent controlled income for the leased studio unit of $4,836, the court determines the adjusted net operating income for the subject property to be $43,827, yielding a capitalized value of $547,837 based on a 8% capitalization rate. *Testimony of Steven J. Decker,* May 9, 2013 at 10:33-10:34 a.m. Subtracting Mr. Decker's adjustments for rent loss of $6,896 and deferred maintenance of $7,000, which adjustments the court finds to be credible, results in an indicated value of $533,939 based on an income approach.

Mr. Decker stated his opinion that, in the last 18 months, the local real estate sales market has improved slightly, based on the fact of rising rents of approximately 4 to 8% during that time frame. *Testimony of Steven Decker*, May 9, 2013 at 11:24 a.m. In an order entered on January 31, 2012 in the prior bankruptcy case, the court by Honorable Ellen Carroll valued the subject property at $510,000 as of July 13, 2011 upon debtor's motion, not opposed by movant. Considering the competing valuation opinions by the expert witnesses—on the one hand, Mr. Decker believes the market has slightly improved, if at all, and on the other, Mr. Hahn considering an 18-month-old comparable

1 sale to be relevant in today's market and stating that the market has not changed much—
2 the court finds that because the market has remained stable or slightly improved since
3 the court's valuation July 2011, it is appropriate to value the subject property at least
4 $510,000 at this time. This valuation is supported by the court's determinations of market
5 value under the sales comparable and income approaches discussed above.

6       Because the court determines the value of the subject property to be $510,000,
7 there is equity of $81,733 net of movant's lien, creating an equity cushion of
8 approximately 16%. The court determines that this is a sufficient equity cushion to
9 adequately protect movant's lien, and thus, concludes that at this time, stay relief for this
10 secured creditor should be denied based on 11 U.S.C. § 362(d)(1). *See In re Mellor,* 734
11 F.2d at 1400-1401 and n. 2, and cases cited therein, including *In re McGowan,* 6 B.R.
12 241, 243 (Bankr. E.D. Pa. 1980) (10% equity cushion sufficient adequate protection) and
13 *In re Rogers Development Corp,* 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) (15-20% equity
14 cushion sufficient adequate protection); *see also, In re Pitts,* 2 B.R. 476, 476-478 (Bankr.
15 C.D. Cal. 1979)(suggesting that the adequate protection provided by an equity cushion
16 may be reanalyzed periodically to avoid dissipation).

17       As a separate matter, the court also finds that 11 U.S.C. § 362(d)(3) does not
18 apply to this debtor because the property is not Single Asset Real Estate (SARE) within
19 the meaning of that section or 11 U.S.C. § 101(51B). Movant checked off the box for
20 relief under 11 U.S.C. § 362(d)(3) in its form motion, but did not check off the boxes that
21 the property qualifies as a SARE and met the test for relief under that section in its
22 moving papers. Moreover, movant did not present any evidence showing that the
23 property was a SARE. Debtor did not self-identify itself as a SARE debtor in its
24 bankruptcy petition, nor has the court determined that debtor was a SARE debtor. As
25 indicated in its bankruptcy schedules, debtor has income from its active business and
26 multiple rental property located at 2424 South Raymond Street, Los Angeles, California,
27 and 735 West 52nd Place, Los Angeles, California as well as the subject property.
28 Indeed, a SARE chapter 11 bankruptcy case is one in which the debtor owns a single

piece of real estate—property or project, "other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor . . . ." 11 U.S.C. § 101(51B).  *In re Hassen Imports Partnership*, 466 B.R. 492, 507 (Bankr. C.D. Cal. 2012) ("Further, it is undisputed that the Debtor owns multiple commercial properties and, thus, the Properties cannot be classified as a 'single property' under § 101(51B)."); *see also, In re McGreals*, 201 B.R. 736, 742-743 (Bankr. E.D. Pa. 1996) ("[I]n order for two or more separate properties to constitute a single project within meaning of Code § 101(51B), the properties must be linked together in some fashion in a common plan or scheme involving their use[;]" mere common ownership without intent to combine the properties in any way does not constitute a "common plan or scheme.").  It appears that movant made a mistake in checking off the box for § 362(d)(3) relief because assertion of a claim under that section is erroneous.

Finally, the court finds that the circumstances indicate that this was not a bad-faith filing to justify relief from stay pursuant to 11 U.S.C. § 362(d)(4).  Although this is the debtor's second bankruptcy filing (*see* Prior Bankruptcy Case No. 2:11-bk-38517 RK Chapter 11), the first bankruptcy case was dismissed at the debtor's request because it was not able to comply with United States Trustee Guidelines at that time due to fiscal constraints.  Debtor's monthly operating reports required extensive amendments, which the debtor determined would impair the feasibility of its plan for reorganization.  Debtor refiled its bankruptcy case to avoid the unnecessary expense of correcting its monthly operating reports and to start on a "clean slate" in negotiating with creditors and formulating a plan of reorganization to repay creditors, which does not indicate a "scheme to delay, hinder, or defraud" its creditors within the meaning of § 362(d)(4).  In this case, debtor has filed a proposed plan of reorganization to pay movant's secured claim in full at the contract rate of 7.75% amortized over 30 years, and although the proposed payment duration stretches out the repayment of the existing loan, this indicates to the court the lack of a scheme to delay, hinder or defraud creditors, though the court takes no position at this time whether the plan is otherwise confirmable on a "cramdown" basis under 11

1  U.S.C. § 1129(b) because taking such a position would be premature before the
2  confirmation hearing.  The filing of the proposed plan with accompanying disclosure
3  statement on January 4, 2013 was relatively prompt after the case was filed on
4  December 18, 2012.  Based on these circumstances, the court find that debtor has met
5  its burden of proving by a preponderance of the evidence that this case was not filed as a
6  scheme to delay, hinder or defraud creditors within the meaning of 11 U.S.C. § 362(d)(4).
7       For the reasons stated herein, the court will enter a separate order denying the
8  motion for relief from the automatic stay.  This memorandum decision constitutes the
9  court's findings of fact and conclusions of law.

###

Date: May 22, 2013

Robert Kwan
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM DECISION ON MOTION OF LITTLE MEDICI, LLC, FOR RELIEF FROM AUTOMATIC STAY REGARDING PROPERTY LOCATED AT 4219-4225 HOOVER STREET, LOS ANGELES, CALIFORNIA** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **May 22, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

Marc Andrews   sandra.g.mcmasters@wellsfargo.com
Douglas C Biggins   chadbiggins@gmail.com
Steve Burnell   sburnell@frankel-tennant.com
J Sheldon Capeloto   jcapeloto@capelotolaw.com
Richard Girgado   rgirgado@counsel.lacounty.gov
M Jonathan Hayes   jhayes@srhlawfirm.com, roksana@srhlawfirm.com;carolyn@srhlawfirm.com;shawnj@srhlawfirm.com
Alvin Mar   alvin.mar@usdoj.gov
Peter F McAndrews   pfm@mamlawfirm.com
Peter F McAndrews   pfm@mamlawfirm.com
Douglas G Tennant   dtennant@frankel-tennant.com
Eric J Testan   etestan@frankel-tennant.com
Michael D Testan   mtestan@frankel-tennant.com
Susana B Tolchard   susana@tolchardlaw.com, centraldistrictbk@gmail.com
United States Trustee (LA)   ustpregion16.la.ecf@usdoj.gov
Mark T Young   myoung@donahoeyoung.com

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

DBI Housing, Inc.
4808 West Washington Blvd.
Los Angeles, CA 90016

Steven J. Decker
Steven J. Decker & Associates
5800 Hannum Ave Ste#A235
Culver City, CA 90230

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below: